# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

———————————

**Misc. Dkt. No. 2025-01**

———————————

**UNITED STATES**
*Appellant*

**v.**

**Juan G. GALE**
Captain (O-3), U.S. Air Force, *Appellee*

———————————

Appeal by the United States Pursuant to Article 62, UCMJ

Decided 12 June 2025[1]

———————————

*Military Judge*: Tiny L. Bowman, Matthew P. Stoffel.

*GCM convened at*: Tinker Air Force Base, Oklahoma.

*For Appellant*: Major Tyler L. Washburn, USAF (argued); Colonel Matthew D. Talcott, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Mary Ellen Payne, Esquire.

*For Appellee*: Major Jordan M. Grande, USAF (argued); Lieutenant Colonel Allen S. Abrams, USAF.

Before JOHNSON, DOUGLAS, and WARREN, *Appellate Military Judges.*

Judge WARREN delivered the opinion of the court, in which Chief Judge JOHNSON joined. Judge DOUGLAS filed a dissenting opinion.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

---

[1] The court heard oral argument in this case on 24 April 2025.

WARREN, Judge:

This case arises out of an interlocutory appeal under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862,[2] in a general court-martial—the second court-martial to which the same charges were preferred (albeit by a different commander) and referred against Appellee ("accused") by the same general court-martial convening authority (GCMCA).

To orient the reader, this case involves issues arising from alleged accusatory unlawful influence (UI) in the preferral and referral of charges for the first court-martial, followed by the withdrawal of and dismissal, without prejudice, of those charges by the same GCMCA. The re-referral of those same charges gave rise to litigation over whether the re-referral was authorized under Rule for Courts-Martial (R.C.M.) 604(b). Because the procedural history pertinent to this interlocutory appeal thus involves two separate courts-martial presided over by three different military judges, for ease of reference, we will refer to these judges by the designators MJ1, MJ2, and MJ3 (MJ1: Thomas A. Smith (first court-martial, 23–24 May 2023); MJ2: Tiny L. Bowman (second court-martial: first and second motions hearings, 23–24 February 2024 and 26–28 March 2024); MJ3: Matthew P. Stoffel (second court-martial: third motions hearing, 9–10 September 2024)).

During pretrial motions practice in this second court-martial, the current military judge concluded that GCMCA withdrew and dismissed without prejudice charges referred to Appellee's first court-martial for an improper reason, namely to "interfere with the impartiality of the court-martial," when that withdrawal and dismissal came in the midst of ongoing pretrial litigation concerning alleged accusatory UI by the GCMCA impacting the preferral of charges. Because the GCMCA ultimately re-referred the exact same charges to a second court-martial, the military judge concluded R.C.M. 604(b) forbade the re-referral of charges withdrawn and dismissed for an "improper reason," and, as a result, he dismissed all the charges and specifications with prejudice.

The Government (Appellant) appeals the ruling by the current detailed military judge, Judge Stoffel (MJ3), on the grounds that he abused his discretion in his application of facts to the law in this case because (1) the GCMCA acted with benign motives in withdrawing and dismissing the charges as an anticipatory remedy to purge any taint from the alleged improper original preferral of charges, and (2) MJ3's prejudice analysis (finding prejudice for deprivation of the mere possibility of a dismissal with prejudice for the underlying UI

---

[2] References to Article 62, UCMJ, are to the *Manual for Courts-Martial*, *United States* (2024 ed.); all other references to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial*, *United States* (2019 ed.).

motion) was illusory insofar as he premised it on mere speculation. We agree for two reasons. First, MJ3's ruling that the GCMCA withdrew and dismissed the charges with the intent of interfering with the court-martial is belied by his own contrary findings of fact on that issue. Second, his conclusion that Appellee suffered prejudice was premised entirely on speculation as to the mere "potential [of a] case dispositive outcome" which might have ultimately arisen had the first military judge ruled in Appellee's favor. However, that "potential outcome" was unsupported in law or fact given the record before him, and the loss of such an unobtainable outcome was not "prejudicial." As such, the MJ3's application of facts to the law was clearly unreasonable and constituted an abuse of discretion.

## I. BACKGROUND

This appeal concerns a long and winding road concerning the same substantive underlying charges involving Appellee in three different fora: one offer of nonjudicial punishment and two subsequent court-martial proceedings. The journey began in March 2022 when the GCMCA offered, and Appellee subsequently turned down, a nonjudicial punishment forum for charges involving alleged fraternization with an enlisted Airman, and nonconsensual sexual advances towards the girlfriend of another enlisted Airman. It continued with the first court-martial, which ended in withdrawal of charges after allegations of accusatory UI in the original preferral of charges. The dismissal of charges was followed by re-preferral by a new commander and re-referral by the original GCMCA to a second court-martial.

The current procedural posture of the case finds us in the midst of pretrial litigation in Appellee's second court-martial following the re-preferral and re-referral of charges originally withdrawn and dismissed without prejudice by the GCMCA on 7 June 2023 from Appellee's first court-martial. The GCMCA took that action in response to a preliminary ruling by the first military judge (Judge Thomas A. Smith, hereinafter MJ1) on 1 June 2023 that the Defense had established "some evidence" of actual and apparent accusatory UI committed by the same GCMCA, then-Major General Michael Koscheski, involving the preferral of charges following Appellee's nonjudicial punishment refusal.

MJ3's findings of fact included an extensive recital of the procedural history of the case. Neither side challenges MJ3's findings of fact.[3] The following

---

[3] In our summarization of MJ3's findings of fact we occasionally note particular findings of fact which MJ3 *did not make* as part of his analysis of the motion before him. In so doing, we are not "finding new facts" in violation of our mandate to review only

summary of procedural history and pertinent facts by this court is derived from MJ3's findings of fact.

- 23–24 May 2023: First Court-Martial (C-M), Motions Hearing. MJ1 presided over a pretrial motions hearing litigating Appellee's vindictive prosecution and UI motion. The Defense requested dismissal with prejudice as a remedy for what it deemed as both adjudicative UI (alleged witness intimidation) and accusatory UI (improper influence on the preferring official, Appellee's then-wing commander, Colonel (Col) KC).[4]

- 1 June 2023: First C-M, MJ1 UI Notice of Ruling. MJ1 issued a notice of ruling on UI motion via email titled: "U.S. v. Gale (Tinker) – Notice of Ruling re [UI] (Burden Shift to Govt)." Therein MJ1 concluded that the Defense met their modest evidentiary burden for the motion only as to its accusatory UI claims, having done so by presenting "some evidence that Col [KC], the individual who preferred charges in this case, may have done so at the direction of . . . the GCMCA who initially offered [Appellee] NJP [nonjudicial punishment] and ultimately referred the charges in this case to a GCM after [Appellee] turned down the NJP offer." MJ1 then informed the parties the burden had shifted to the Government to either (1) disprove the predicate facts; (2) demonstrate those facts do not constitute UI; or (3) demonstrate that any actual UI will not impact the findings or sentence; and that

---

matters of law in this Article 62, UCMJ, appeal. *See* Article 62(a), UCMJ, 10 U.S.C. § 862(a); *see also United States v. Baker*, 70 M.J. 283, 287–88 (C.A.A.F. 2011) (holding that the United States Army Court of Criminal Appeals exceeded its authority in deciding an Article 62, UCMJ, appeal in making a contrary factual finding to the military judge). Rather, we are merely noting the absence of certain factual matters as part of an exploration of whether MJ3 may have abused his discretion in applying his findings of fact to the law in a clearly unreasonable way in reaching legal conclusions which would have only been sustainable in the presence of additional facts. *See United States v. Shelby*, __ M.J. __, No. 24-0186, 2025 CAAF LEXIS 64, at *4 (C.A.A.F. 28 Jan. 2025) (citation omitted) (holding that military judges abuse their discretion if they "appl[y] correct legal principles in a clearly unreasonable way").

[4] We note that while the Defense demanded a dismissal with prejudice as a remedy for the combined effects of the alleged adjudicative and accusatory UI, none of the cases cited in trial defense counsel's motion involved dismissal with prejudice for substantiated accusatory UI. The Defense did *not* request the disqualification of the GCMCA as one of their proposed remedies for the alleged accusatory UI by the GCMCA.

any apparent UI does not place "an intolerable strain on public perception of the military justice system." Nowhere in the ruling did MJ1 prejudge the ultimate outcome of the motion nor indicate remedies he was considering in the event of a defense victory on the motion. Instead, he simply advised the parties to "be prepared to take up this issue[, *i.e.,* accusatory UI,] upon our continued motion practice on 12 June 2023."[5]

- <u>5 June 2023: First C-M, Trial Defense Counsel Protest Email</u>. Trial defense counsel responded to MJ1's email ruling, objecting to the Government being permitted to "re-open their case without good cause" at the forthcoming Article 39(a), UCMJ, 10 U.S.C. § 839(a), session on 12 June 2023.[6]

- <u>5–7 June 2023: GCMCA and SJA Consultation</u>. After receipt of MJ1's email ruling, detailed trial counsel made the GCMCA's staff judge advocate (SJA) aware of the ruling. Following that notification, the SJA apprised the GCMCA of the ruling, and recommended withdrawing and dismissing the charges.[7]

- <u>7 June 2023: Original Charges Dismissed Without Prejudice</u>. The GCMCA withdrew and dismissed all charges without prejudice.

- <u>12 July 2023: Re-Preferral of Charges</u>. Appellee's new wing commander, Col KV, preferred the current charges against Appellee—those charges are identical to the ones previously

---

[5] No motion to disqualify the GCMCA was pending before MJ1 at the time. Appellee's UI motion then pending alleged only the bases recited *supra*.

[6] Trial defense counsel's email manifests a fundamental misunderstanding of the two-phase litigation of UI claims established by *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999), and reiterated in subsequent cases (including *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2014)), upon which MJ1 relied in his email ruling. MJ1's recital of the *Biagase/Salyer* burden shift in his email ruling and advising the Government to be prepared to meet their burden at the next Article 39(a), UCMJ, session, was not an unauthorized "re-opening" of the Government's case; it was simply transitioning to phase II of UI litigation.

[7] While the GCMCA testified during motions practice at the second court-martial as to his understanding of why the SJA was making that recommendation, in his ruling MJ3 did not make any findings of fact as to the basis for the SJA recommendation. Because we are limited to matters of law in considering this appeal, we are constrained to consideration of these limited findings of fact as entered by MJ3. *See Baker*, 70 M.J. at 287–88.

withdrawn and dismissed without prejudice by the GCMCA.[8]

- 11 August 2023: Re-Referral of Charges. The same GCMCA re-referred the charges to a new general court-martial presided over by a new military judge (MJ2).

- 8 September 2023: GCMCA Congressional Inquiry Response and Rationale for Prior Withdrawal and Dismissal of Charges. In response to a congressional inquiry filed on behalf of Appellee, the GCMCA explained that at the time he withdrew and dismissed the charges he was aware that MJ1 had found "some evidence of [UI] in the original preferral of charges by Col [KC], and that, based on the advice of his SJA, he directed the charges be withdrawn and dismissed without prejudice to address those concerns."

- 28 December 2023: Second C-M, Defense Motions. Appellee's trial defense counsel filed several pretrial motions at the current court-martial, including, *inter alia*: (1) a motion to dismiss for speedy trial violation (R.C.M. 707 and Sixth Amendment[9]) and improper referral (R.C.M. 604(b)); and (2) a motion to dismiss for prosecutorial misconduct and unlawful influence (alleging, *inter alia*, accusatory UI in the new preferral and disqualification of the GCMCA for alleged accusatory UI in the first preferral).

- 23–24 February 2024: Second C-M, First Motions Hearing. MJ2 presided over motions practice concerning the motions cited above. The GCMCA, Col KV, and the wing-level SJA all testified concerning the Defense's UI motion.

- 26–27 March 2024: Second C-M, Second Motions Hearing. In an Article 39(a), UCMJ, session on a defense motion for a continuance and a motion to recuse MJ2, MJ2 recited on the record that she previously provided the parties with informal notice that she was denying both Appellee's UI motion and speedy trial and improper re-referral motions.

- 8 May 2024: Second C-M, MJ2 Denial of Defense Motions and Recusal. MJ2 issued her formalized written rulings denying the aforementioned motions and recused herself

---

[8] We note that MJ3 made no findings of fact as to the decision-making process for Col KV in his decision to prefer charges.

[9] U.S. CONST. amend. VI.

from the case on the same day.[10]

- 2 September 2024: Second C-M, Defense Motions for Reconsideration. Appellee requested MJ3 reconsider MJ2's denial of Appellee's UI/speedy trial/improper re-referral motions.

- 9–10 September 2024: Second C-M, Third Motions Hearing. MJ3 presided over an Article 39(a), UCMJ, session litigating, *inter alia*, Appellee's motion to reconsider MJ2's denial of those same motions.

With these facts as prelude, we arrive at the primary ruling at the center of this case: MJ3's 30 December 2024 written ruling in which he granted Appellee's motion to reconsider solely as to the R.C.M. 604(b) re-referral issue. He resolved that issue by making two overarching legal conclusions: (1) the GCMCA did not have a legitimate command reason for withdrawing and dismissing the charges without prejudice, and, in fact, had an illegitimate reason, to wit: an intent to interfere with the impartiality of the court-martial; and (2) that Appellee suffered "unfair prejudice" as a result of the GCMCA's actions in that it prevented MJ1 from issuing a final ruling and potential remedy on the ongoing accusatory UI litigation.

Regarding the legitimate command reason prong, while as a matter of fact MJ3 concluded that it was "more likely than not that the convening authority *did not* have the specific intent to interfere with the impartiality of the court," (emphasis added), he nonetheless concluded: (1) the charges were still withdrawn for an improper reason because: "[it was done with] an *intent* to interfere with the impartiality of a court-martial" (emphasis added);[11] and (2) Appellee suffered unfair prejudice "as a result of the re[-]referral of the identical charges that had been previously withdrawn." In essence, because MJ3 found the impact was prejudicial he presumed that the command interest was illegitimate, notwithstanding absence of a finding of nefarious intent by the GCMCA. Nonetheless, MJ3 cited no evidence of gamesmanship in the re-referral decision. For example, he cited no evidence that the GCMCA was ever told that a dismissal with prejudice was possible or likely; nor evidence that the GCMCA was ever told to withdraw and dismiss as an exercise in "forum shopping" to obtain a

---

[10] MJ3 made no findings that the recusal was in any way linked to litigation over either of these subject motions.

[11] MJ3 ultimately concluded that public perception alone could render a command interest illegitimate: "[W]hether the convening authority[ ] specifically intended to interfere with a judicial proceeding or whether his action instead created the appearance of evil, the end result is the same . . . ."

favorable military judge.[12]

Citing case law from our superior court, the United States Court of Appeals for the Armed Forces (CAAF), in *United States v. Leahr*, 73 M.J. 364, 371 (C.A.A.F. 2014) (quoting *United States v. Underwood*, 50 M.J. 271, 276 (C.A.A.F. 1999)), MJ3 identified four "[c]ircumstances to be considered in determining [whether] a withdrawal was improper" including: (1) "whether the same military judge presided over the second court-marital;" (2) "whether the [Appellee] lost the benefit of a favorable trial ruling;" (3) "whether [Appellee] was in pretrial confinement during the withdrawal and re[-]referral process;" and (4) "whether [Appellee] moved the court for relief based on prejudicial delay." MJ3 then found "unfair prejudice" for three reasons: (1) a new military judge was detailed to the second court-martial; (2) Appellee filed a motion alleging speedy trial delay, and the military judge noted that "in giving weight to this factor, this court recognizes that the practical effect of the improper withdrawal resulted in a delay of over 18 months from his original court to his currently scheduled trial date;" and predominantly (3) where "[Appellee] lost the benefit of a favorable trial ruling" because of the speculative possibility that MJ1 *might* have ultimately dismissed the charges with prejudice. MJ3 explained that the prejudice lay in depriving Appellee of "the *potential case-dispositive outcome . . .* due to the post-arraignment actions of the [GCMCA]." (Emphasis added). The military judge did not explain what specific material prejudicial effect, if any, the change of military judge or intervening delay had on the substantial rights of Appellee. MJ3 made no findings that Appellee was either subject to pretrial confinement or restraint during any of these delays, nor did he make any finding that the delay, standing alone, constituted a speedy trial violation.

By contrast, MJ3 provided a detailed explanation of why he thought Appellee suffered prejudice when the GCMCA dismissed the charges without prejudice while the UI motion was still pending before MJ1. MJ3 essentially explained that the lost "benefit" was the opportunity for Appellee to *potentially* obtain an even more favorable remedy for the UI than the GCMCA's dismissal without prejudice had offered him.

> [Appellee], this court, and the general public are left to *wonder* whether the original military judge *would have* determined whether the [P]rosecution had satisfied its burden on the motion beyond a reasonable doubt and *if* they had not done so, what

---

[12] The relevance of the absence of these facts will become manifest as the reader considers the law at Section II.B.1.b *infra* concerning the importance of the convening authority's specific intent in determining whether the convening authority harbored an illegitimate purpose in the withdrawal and dismissal of the charges.

> remedy the original military judge *would have* deemed appropriate. This is vitally important given the *potential* case dispositive outcome of which [Appellee] was deprived due to the post-arraignment actions of the convening authority.

(Emphasis added). He analogized the case to the decision by the then-styled United States Court of Military Appeals (CMA), in *Vanover v. Clark*, 27 M.J. 345 (C.M.A. 1988), and asserted that, like *Vanover,* the GCMCA's withdrawal and dismissal of charges "had the practical effect of overturning the first military judge's . . . ruling." However, nowhere in his reasoning did MJ3 cite any case law for the proposition that a dismissal with prejudice for accusatory UI (the only issue upon which MJ1 concluded the burden had shifted to the Government to disprove) was a legally cognizable outcome under the facts of Appellee's case.

MJ3 then concluded that dismissal with prejudice was the appropriate remedy for the "improper referral" because the categorical language of R.C.M. 604(b) precludes re-referral of charges withdrawn for an improper reason. He concluded his ruling by noting: "The court understands that a dismissal with prejudice is an extraordinary outcome, but to dismiss without prejudice would not cure the unfair prejudice suffered by the [a]ccused."

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Article 62(a)(1)(A), UCMJ, 10 U.S.C. § 862(a)(1)(A), grants this court jurisdiction over government interlocutory appeals challenging "[a]n order or ruling of the military judge which terminates the proceedings with respect to a charge or specification." The parties agree we have jurisdiction over this case.

A military judge's ruling dismissing a charge or a specification is reviewed for abuse of discretion. *United States v. Shelby*, __ M.J. __, No. 24-0186, 2025 CAAF LEXIS 64, at *3 (C.A.A.F. 28 Jan. 2025). "Abuse of discretion occurs when the military judge: (1) bases a ruling on findings of fact that are not supported by the evidence; (2) uses incorrect legal principles; (3) applies correct legal principles in a clearly unreasonable way; or (4) does not consider important facts." *Id.* at *3–4 (citing *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017)).

Because this issue is before us pursuant to a government appeal, we "may act only with respect to matters of law." Article 62(b), UCMJ, 10 U.S.C. § 862(b). In evaluating the underlying pertinent facts of this appeal, we are limited to determining whether the military judge's factual findings are clearly erroneous or unsupported by the record. *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004) (quoting *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.

1985)). We cannot find our own facts in addition to, or contrary to, the facts found by the military judge, nor can we substitute our interpretation of his facts. *United States v. Baker*, 70 M.J. 283, 288 (C.A.A.F. 2011) (quoting *Gore*, 60 M.J. at 185). Finally, for Article 62, UCMJ, appeals this court "reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial." *United States v. Lewis*, 78 M.J. 447, 452 (C.A.A.F. 2019) (citation omitted).

## B. Withdrawal and Re-Referral of Charges

### 1. Law

#### a. Authority to Withdraw and Re-Refer Charges, Generally

The withdrawal and re-referral of charges is governed by R.C.M. 604. While R.C.M. 604(a) provides broad ambit for a convening authority to withdraw charges for any reason, section (b) creates limits to the re-referral of withdrawn charges, mandating that "[c]harges that have been withdrawn from a court-martial may be referred to another court-martial unless the withdrawal was for an improper reason." R.C.M. 604(b). While not binding, the Discussion section for this Rule suggests that "[i]mproper reasons for withdrawal include an intent to interfere with the free exercise by the accused of constitutional rights or rights provided under the UCMJ, or with the impartiality of a court-martial." R.C.M. 604(b), Discussion. Our superior court has interpreted this "improper reason" limitation as imposing a two-prong standard for re-referral, opining: "Our case law has construed 'proper' in this context as [(1)] a legitimate command reason which [(2)] does not 'unfairly' prejudice an accused in light of the particular facts of a case." *United States v. Underwood*, 50 M.J. 271, 276 (C.A.A.F. 1999) (citations omitted).

#### b. "Improper Reason" Test

Prong 1 of the "improper reason" analysis essentially boils down to whether the convening authority's specified intent is in fact a subterfuge or an ulterior motive. *See Leahr*, 73 M.J. at 369 (citations omitted) (affirming the propriety of dismissal of charges "[a]bsent a situation where a convening authority's express dismissal is either a subterfuge to vitiate an accused's speedy trial rights, or for some other improper reason"). Our superior court has recognized that judicial economy can constitute a proper purpose for re-referral of withdrawn and dismissed charges. *Id.* (citing *United States v. Koke*, 34 M.J. 313, 315 (C.M.A. 1992)). Moreover, absent bad faith, withdrawal and dismissal with an eye towards eventual re-preferral and re-referral of the same charges is not per se improper. *See United States v. Hendrix*, 77 M.J 454, 457 (C.A.A.F. 2018) (holding, in the R.C.M. 707 context, "[w]e disagree with the military judge's conclusion that the convening authority's dismissal of charges with the intent to re[-]prefer implies subterfuge or an improper reason").

Prong 2 of the analysis evaluates whether the effect of the withdrawal and dismissal resulted in material, detrimental impact upon a "legally cognizable right." *See Underwood*, 50 M.J. at 276 (citations omitted). In applying this "unfair prejudice" prong of the *Underwood* test, our superior court has observed that various circumstances could create unfair prejudice including: (1) the second court-martial was not the same type as the first; (2) Appellee lost the benefit of a favorable trial ruling; (3) Appellee was in pretrial confinement during the withdrawal and re-referral process; and (4) Appellee moved for relief based upon prejudicial delay. *Id.* (citations omitted). We view these circumstances as descriptive rather than prescriptive of the prejudice analysis. That is to say, there are circumstances in which prejudice might arise outside of the four "for instances" listed by the CAAF in *Underwood*. Indeed, in applying *Underwood* in *Leahr*, our superior court observed another circumstance that could create prejudice, to wit: "did [it] harm [the a]ppellant's ability to present his defense at the second court-martial." *Leahr,* 73 M.J. at 369.

Insofar as MJ3 described the alleged "loss of the benefit of a favorable trial ruling" as the heaviest determinant that Appellee suffered prejudice in this case, we pause here to provide a more detailed treatment of this circumstance as evaluated in the case law. We begin with the case MJ3 relied upon most heavily: *Vanover v. Clark*—a decision predating *Underwood* by 11 years. In *Vanover*, the CMA ruled that withdrawal and re-referral of charges was improper because it had the practical effect of nullifying the exclusion of uncharged misconduct excluded by the military judge in the first court-martial. 27 M.J. at 347 (citations omitted). In the CMA's estimation, this occurred when the convening authority referred additional charges alleging the previously excluded misconduct to the second court-martial. *Id.* at 348.

However, the CAAF explicitly distinguished *Vanover* in *Underwood*, finding no improper withdrawal and re-referral of charges when the convening authority did so to facilitate the trial availability of a key government witness after the military judge had denied a government continuance request, same subject, holding "this case is not *Vanover*, because a trial judge's ruling was not clearly flouted." *Underwood*, 50 M.J. at 275. In *Underwood*, the appellant argued that he lost the benefit of the military judge's denial of the government continuance because the withdrawal and re-referral of charges established a new trial date where the Government was able to proceed with their witness. *Id.* The court soundly rejected that premise, explaining "the trial judge's earlier continuance denials created no legally cognizable right to a trial without the prosecution witness . . . nor can the speculative possibility of such an occurrence in any sense be considered substantial." *Id.* (citations omitted).

### c. Remedies for Accusatory Unlawful Influence

Selection of remedies by a military judge is a function of whether the underlying error is curable. There is no default remedy for an instance of accusatory UI. While UI exerted upon a preferring official invalidates the preferral, s*ee United States v. Hamilton*, 41 M.J. 32, 36 (C.M.A. 1994) (citations omitted) (charges are treated as unsigned and unsworn for purposes of Article 30, UCMJ, 10 U.S.C. § 830, and R.C.M. 307), dismissal of those charges with *or without* prejudice is authorized. *See, e.g., United States v. Boyce*, 76 M.J. 242, 253 n.10 (C.A.A.F. 2017) (dismissing charges without prejudice for accusatory UI involving the Chief of Staff of the Air Force, stating "we conclude that reversing the findings with prejudice would result in an improper windfall for [a]ppellant because he did not suffer individualized prejudice in this case"); *United States v. Villareal*, 52 M.J. 27, 31 (C.A.A.F. 1998) (finding that transfer of a case to an impartial convening authority cured any appearance of unlawful command influence).

Dismissal with prejudice is a drastic remedy and is only appropriate when no other remedy will purge the taint of the unlawful influence concerned. *Cf. Gore*, 60 M.J. at 189 (holding the military judge did not abuse his discretion in dismissing charges with prejudice for *adjudicative* UI where comments of the command hopelessly chilled the willingness of members of the command to serve as witnesses for the accused). As a case in counterpoint, in *United States v. Saunders,* this court granted the Government's Article 62, UCMJ, appeal, holding that the military judge's dismissal with prejudice for accusatory UI was an abuse of discretion because "[h]e could have dismissed the charges without prejudice, while noting his belief that any new commander who prefers the charges should not be informed about the problematic history of the case." Misc. Dkt. No. 2014-15, 2015 CCA LEXIS 156, at \*27–28 (A.F. Ct. Crim. App. 17 Apr. 2015) (unpub. op.) (citation omitted). This court emphasized that military judges are obliged to consider the full gamut of remedies prior to imposing the most "drastic" remedy available:

> Because dismissal of charges is a drastic remedy, courts must determine if alternative remedies are available. Such an action "is appropriate when an [accused] would be prejudiced, or no useful purpose would be served by continuing the proceedings." However, "[w]hen an error can be rendered harmless, dismissal is not an appropriate remedy."

*Id*. at \*26 (alterations in original) (citations omitted). Cases in which dismissal with prejudice have been upheld often involve prejudicial impact to an accused's right to a fair trial or impartial panel, both of which are substantive due process rights as opposed to procedural ones. *See United States v. Gilmet*, 83 M.J. 398, 408 (C.A.A.F. 2023) (dismissal with prejudice where actions

interfered with the attorney-client relationship); *United States v. Harvey*, 64 M.J. 13, 21–25 (C.A.A.F. 2006) (dismissing without prejudice where convening authority's presence at the court-martial raised concerns about the impartiality of the panel members); *Gore*, 60 M.J. at 189 (affirming dismissal with prejudice where the convening authority ordered a senior enlisted chief petty officer not to testify and may have deterred others from testifying on behalf of the appellant).

Finally, our superior court has affirmed proactive command mitigation measures in the face of suspected UI claims. *See, e.g., United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999) (transfer of case to a new convening authority ameliorated any prejudice from accusatory UI in convening authority's withdrawing from a pretrial agreement at the suggestion of a superior); *United States v. Rivers*, 49 M.J. 434, 443 (C.A.A.F. 1998) (command's pretrial remedial action to retract a command policy letter on appropriate punishments for drug cases ameliorated prejudice); *United States v. Sullivan*, 26 M.J. 442, 442–44 (C.M.A. 1988) (pretrial cleansing statements from the commander and convening authority purged taint from prior remarks by unit officials that persons testifying that drug users had rehabilitative potential might anticipate adverse career impact themselves).

### 2. Analysis

The parties here raise two fundamental disagreements regarding the propriety of the GCMCA's dismissal and re-referral of the charges in this case: (1) whether preemptive actions by a convening authority, in the absence of specific prescribed remedies by a trial court, are in furtherance of legitimate command interests in proactive remedies for alleged errors and judicial economy; and (2) whether the loss of an opportunity to obtain a potentially favorable trial ruling, no matter how unlikely, constitutes unfair prejudice.

#### a. Legitimate Command Interest

The issue here is whether command action to enact anticipatory remedies for alleged accusatory UI to maximize judicial economy are legitimate command interests within the meaning of R.C.M. 604(b). We hold that they are. Absent evidence of improper ulterior motives (none of which were included in MJ3's findings of fact), both judicial economy and amelioration of alleged UI are legitimate command interests. *See Leahr*, 73 M.J. at 369*; Villareal*, 52 M.J. at 30.

We begin by observing that the question of whether the convening authority acted with a legitimate command interest in withdrawing and dismissing charges is a mixed question of fact and law. Here, while MJ3 characterized his conclusion as one of law that the GCMCA "acted for an improper reason, that being an intent to interfere with the impartiality of a court-marital," we

conclude that the issue of the GCMCA's underlying intent in the withdrawal and dismissal of charges is a finding of fact, and the conclusion as to whether that intent implicates an "improper" reason for action is a conclusion of law. It was MJ3's responsibility to apply that underlying finding of fact (as to the GCMCA's motives, intent, and stated purpose) to the legal standard of "legitimate command interests" in a reasonable way.

Ultimately, MJ3 provided self-contradictory analysis concerning this issue. On one hand, he began his analysis by concluding that "the act of withdrawal was done for an improper reason, that being an *intent* to interfere with the impartiality of the court-martial." (Emphasis added). However, he did not support that conclusion with any evidence of that intent. While MJ3 concluded as a matter of fact that the GCMCA was informed of MJ1's ruling by his SJA, he made no findings as to any evidence that the GCMCA took action in any anticipation of a looming "dismissal with prejudice" perceived by either the GCMCA himself or his legal advisors. More pointed still, one of MJ3's conclusions was that "it is more likely than not that the convening authority *did not* have the specific intent to interfere with the impartiality of the court." (Emphasis added). He then attempted to reconcile these irreconcilable concepts by positing that the GCMA's actions "instead created the appearance of evil." This was clear error. Fundamentally, the question of legitimate command reason is informed in large measure by the specific intent of the GCMCA.

In addition, the military judge's analogizing Appellee's case to *Vanover* for the precept that the GCMCA lacked a legitimate command interest because his withdrawal and dismissal had the practical effect of overturning the first military judge's evidentiary ruling was a clearly unreasonable application of fact to the law. This case is the exact inverse of *Vanover*. Whereas in *Vanover* the GCMCA's withdrawal and re-referral of charges in effect reversed the original military judge's ruling by converting impermissible uncharged misconduct into admissible charged misconduct, here the GCMCA's actions provided superior relief to that provided in MJ1's preliminary ruling. Whereas MJ1 had merely articulated an interlocutory *burden shift* (*i.e.*, that the burden had shifted to the Government to disprove actual and apparent accusatory UI), the GCMCA's actions granted Appellee a *remedy*. In other words, while the GCMCA's actions in *Vanover reversed* a favorable trial ruling, the GCMCA's actions here *enhanced* a favorable trial ruling.

Moreover, MJ3 did not explain how the decision to withdraw and dismiss the charges "interfered with the impartiality" of the court as that word, impartiality, is commonly understood. He offered no analysis on how the withdrawal and dismissal impacted the impartiality of the later-detailed military judges, on any prospective court member, on any prospective witness, or on any member of the defense counsel team. Instead, he attempted to force the proverbial

square peg into the proverbial round hole by conflating the concepts of command interest and prejudice. By essentially asserting that the convening authority's intent was insignificant to determining the existence of a legitimate command reason the inescapable implication is that MJ3 reasoned that there could be no legitimate command interest if the pursuit of that interest resulted in prejudice. Such reasoning would render the first prong a nullity. To the extent the military judge concluded that evidence of (speculative) prejudice precluded a finding of a legitimate command reason that conclusion represents an erroneous view of the law under *Underwood* and *Leahr*.

Finally, MJ3's self-contradictory conclusion that the GCMCA acted for improper reasons conflated a mere "appearance of evil" with an illegitimate command purpose. In failing to explain how the absence of nefarious intent to interfere with the impartiality of the court-marital was somehow consistent with his countervailing conclusion the convening authority acted with the intent to interfere with the impartiality of the court-martial, MJ3's application of facts to law was clearly unreasonable.[13]

### b. Unfair Prejudice

We center our analysis on whether Appellee suffered "prejudice" from the GCMCA's withdrawal and dismissal of charges as MJ3 found, namely: whether Appellee "lost the benefit of a favorable trial ruling" within the meaning of

---

[13] Furthermore, we note that to the extent the court in *Vanover* chastised the military judge for not doing more to "adequately dispel the appearance of evil" at the appellant's second court-martial, the CMA's comments appeared to be referring to the limitations the second military judge placed on the defense counsel during the second court-martial from challenging the re-referral of charges. *See* 27 M.J. at 348. That is to say, while the CMA concluded that the referral of additional charges had flouted the prior military judge's exclusion of evidence, the "appearance of evil" came from the second military judge hamstringing the Defense in how they were permitted to present their challenge to the re-referral. *See id.* at 347–48.

Specifically, the CMA took issue with the fact that the second military judge refused trial defense counsel's request that the trial counsel testify on the defense motion to dismiss for improper referral where the defense theory was that the trial counsel himself advised the convening authority to re-refer with additional charges for an improper tactical purpose. *Id.* at 348. The CMA concluded the military judge then compounded his error by permitting the same trial counsel to stay on the case and argue the motion, providing that counsel with, in the court's estimation, the equivalent of testimony without cross-examination. *Id.*

All this is to say, we do not read *Vanover* as embracing mere speculation or perception as a basis for prejudice in a R.C.M. 604(b) context. Rather we read the "appearance of evil" reference by the CMA as simply an apt criticism of the second military judge's enactment of unfair litigation practices during the motions practice.

*Vanover*, *Underwood*, and *Leahr*. MJ3's conclusion that the GCMCA's withdrawal and dismissal of charges without prejudice "interfere[d] with the ruling of [MJ1]" can only be understood as an implied assertion by MJ3 that the GCMCA's action caused prejudice because it prevented MJ1 from potentially deciding to grant a dismissal with prejudice for Appellee's accusatory UI claims. After all, that was the only "case dispositive outcome" left after the GCMCA had dismissed the charges "without prejudice."

We begin by observing that the loss of a favorable trial ruling requires ascertaining what the actual benefits of that ruling were. Here, there was only one *actual* benefit of the ruling—a burden shift to the Government. The "potential case dispositive outcomes" obliquely referred to by MJ3 as lost benefits are only that—desired outcomes, *not* tangible benefits of the ruling. As such, MJ3 abused his discretion by applying the facts to the law in a clearly unreasonable way in mis-analogizing this case to *Vanover* and concluding that the cases were alike in that they both "had the practical effect of overturning the first military judge's . . . ruling." *Vanover* involved an actual tangible benefit in the first military judge's ruling: the exclusion of evidence. *Vanover*, 27 M.J. at 348. Here, MJ1 prescribed no remedy in this ongoing UI motions practice. To be clear: the only tangible benefit Appellee lost in the withdrawal and dismissal of charges without prejudice was a process-type benefit. But the purpose of this process for Appellee is to obtain a *remedy*. He received a remedy in the form of dismissal of charges putatively tainted by UI without prejudice. While Appellant alleged that the subsequent re-preferral (by a different commander, Col KV) and re-referral were themselves tainted by UI, MJ3 made no such finding in his order. Thus, in the absence of such a finding, there was no "prejudice" in the "loss" of a mere process benefit when he received a superior substantive benefit in the withdrawal and dismissal of the charges remedy.

As to the loss of the *potential outcomes*, even if we were to attempt to distinguish *Underwood* and consider the possibility of a more favorable ruling as a form of prejudice, here the loss of those contingencies is not prejudicial where there is no reasonable possibility on these facts that MJ1 would have dismissed the case with prejudice on the only grounds he ruled Appellee had met his initial burden: accusatory UI. MJ3 fundamentally misapplied the concept of "prejudice" because Appellee never had a legally cognizable right to dismissal with prejudice for an accusatory UI allegation where nothing in the record before MJ1 or MJ3 indicated any putative accusatory UI was incurable. In the absence of incurable error a dismissal with prejudice for alleged UI is inappropriate. *See Gore*, 60 M.J. at 187 (citing *United States v. Mechanik*, 475 U.S. 66 (1986)) ("When an error can be rendered harmless, dismissal is not an appropriate remedy.").

Nothing in MJ1's ruling indicated to the contrary. Nothing in the ruling mentioned any final ruling on the underlying UI motion, much less a discussion of a likely remedy emerging from that ruling. Yet MJ3 was undeterred and declared that there was "prejudice" in an "appearance of evil" emanating from a situation where, in his words: "[Appellee], [MJ3], and the general public are left to *wonder* whether the original military judge *would* have determined whether the [P]rosecution had satisfied its burden on the motion beyond a reasonable doubt and *if* they had not done so, what remedy the original military judge *would have deemed appropriate.*" (Emphasis added). Lured by the illusion of mere speculation masquerading as prejudice, MJ3's reasoning ran afoul of CAAF's admonition in *Underwood* (rejecting the concept of speculation as to the implications of rulings themselves creating "substantial" prejudice), as CAAF cautioned: "nor can the speculative possibility of such occurrence in any sense be considered substantial." *Underwood*, 50 M.J. at 276 (citations omitted).

Moreover, even if potential undeclared remedies for a ruling were a species of "prejudice" recognized by the CAAF, on the facts before MJ1 there was no basis to conclude that dismissal with prejudice was even an authorized remedy for the alleged accusatory UI.[14] In the absence of any remedy in MJ1's ruling indicating whether Appellee lost the "benefit" of MJ1's ruling, MJ3 had a responsibility to evaluate whether the *potential* of a dismissal with prejudice was

---

[14] We note that the defect in accusatory UI is a compromise of independent decisionmaking by a preferral, forwarding, or referral authority. *See* Article 37(a)(5)(B), UCMJ, 10 U.S.C. § 837(a)(5)(B) ("No superior convening authority or officer may direct a subordinate convening authority or officer to make a particular disposition in a specific case or otherwise substitute the[ir] discretion . . . for that of the subordinate."). However, anyone subject to the Code may prefer charges. *See* Article 30(a)(1), UCMJ, 10 U.S.C. § 830(a)(1). And the universe of convening authorities under Article 22, UCMJ, 10 U.S.C. § 822, extends far wider than Appellee's chain of command.

Thus, Appellee's rights to not have charges preferred or referred against him if such action was wrought by unlawful influence in violation of Article 37, UCMJ, is readily remediable by a legion of qualified preferring and referring authorities capable of conducting an independent evaluation of evidence and making an independent decision as to case disposition. Thus, in the absence of extenuating circumstances, we are hard pressed to identify a circumstance where accusatory UI would be incurable. Such a situation might arise if an accused's ability to secure counsel, or prepare and present a defense was impaired by, for example, inordinate delay in litigating accusatory UI issues such that witnesses or evidence have become unavailable. As related above, there is no record of that in this case. MJ3 never made any ruling that the delay in proceedings due to the alleged accusatory UI to date had imposed a speedy trial violation upon Appellee or deprived him of equal access to evidence under Article 46, UCMJ, 10 U.S.C. § 846, or impaired his Sixth Amendment rights to compulsory process and to present a defense.

even legally authorized under the circumstances—he never did so. *Cf. Vanover*, 27 M.J. at 347. MJ3 cited no law in support of his insinuation that MJ1 might have imposed a dismissal with prejudice for a curable error. Neither did he seek to distinguish the long line of precedents holding that dismissal with prejudice is unavailable for curable errors. Nor did he grapple with our superior court's decision in perhaps the most prominent case of accusatory UI in the Air Force in particular, *United States v. Boyce*, where our superior court concluded that apparent UI in the accusatory process by the Chief of Staff of the Air Force upon the GCMCA did not warrant a dismissal with prejudice, stating, "[W]e conclude that reversing the findings with prejudice would result in an improper windfall for [a]ppellant because he did not suffer individualized prejudice in this case." 76 M.J. at 253 n.10. Thus, as a matter of law, there was no legitimate basis to conclude that Appellee's accusatory UI allegations qualified for the most drastic remedy available under the law. *See Gore*, 60 M.J. at 189.[15]

Consistent with the standard of review, we have reviewed the facts below at trial in the light most favorable to the prevailing party, to consider whether MJ3's ruling implicated any other potential basis for "unfair prejudice" to Appellee. But even this accommodating standard is not a license for us to relax the CAAF's preclusion of speculation as a substitute for prejudice for alleged improper referral cases. *See Underwood*, 50 M.J. at 276. So, even if we were tempted to reach speculative conclusions (in light of the unique facts of this case where the Government's preemptive actions are responsible for the unresolved motions practice) that: (1) Appellee would have prevailed on his accusatory UI motion before MJ1, and (2) MJ1 would have disqualified the GCMCA from future referrals because he deemed him an "accuser" within the meaning of Article 1(9), UCMJ, 10 U.S.C. § 801(9), material prejudice against Appellee still would not exist because that would not preclude *another* convening authority from referring charges against Appellee. To presume otherwise is to indulge in a second layer of rank speculation which we decline to delve into. *See Boyce*, 76 M.J. at 250 (holding no prejudice for actual accusatory UI because "a convening authority merely applies a reasonable grounds standard in determining whether to refer charges to a general court-martial (which is quite a low standard) . . . [, and] there is no reasonable likelihood that a different

---

[15] Moreover, even if we were inclined to apply the much more lenient "colorable showing of possible prejudice" standard to this case (applicable only in the inherently discretionary context of clemency determinations), MJ3's assertions of "prejudice" based on speculation would be insufficient because "sheer speculation" is insufficient even under that relaxed standard. *See United States v. Brown*, 54 M.J. 289, 293 (C.A.A.F. 2000).

convening authority standing in the shoes of [the GCMCA] would have made a different referral decision").[16]

Accordingly, by divining "prejudice" from the speculative loss of a "benefit" that Appellee was not entitled to, the military judge operated under an erroneous understanding of the law, applied the facts to the law in a clearly unreasonable way, and in so doing, abused his discretion. *See Shelby*, 2025 CAAF LEXIS 64, at \*6 ("[B]ecause less drastic alternatives remedied the concerns raised by the military judge, his decision to dismiss the charge and specification with prejudice constituted an abuse of discretion." (citation omitted)); *see also United States v. Holmes*, 84 M.J. 704, 714 (A.F. Ct. Crim. App. 2024) ("We emphasize that the corrective action should be reasonably calculated to actually correct the harm; it may not be merely punitive. Under these circumstances, a military judge should not set forth punitive measures against the Government under the guise of corrective action."), *rev denied*, __ M.J. __, No. 24-0224/AF, 2024 CAAF LEXIS 681 (C.A.A.F. 2024).[17]

---

[16] To be clear, if MJ3 found meritorious defense claims that then-Maj Gen Koscheski committed accusatory UI as to the original preferral of charges which rendered him an "accuser" within the meaning of Article 1(9), UCMJ, and thus disqualified him from re-referring charges in this second court-martial on the same charges, MJ3 had the authority to make that ruling. But that is not what he did. Instead, he engaged in speculation about what MJ1 *might* have done, ascribed "prejudice" to that speculation, and used R.C.M. 604(b) as a mechanism to dismiss the charges with prejudice. However, disqualification of a convening authority is not the equivalent of dismissing charges with prejudice—it does not preclude future referral of the same charges by a different convening authority.

In short, MJ3 appears to have applied an apparent UI filter to a R.C.M. 604(b) issue. But he was not ruling upon a UI motion; instead, he chose to forego ruling on the Defense's UI motion directly and rule only upon the R.C.M. 604(b) motion. Unlike apparent UI claims, a prerequisite for granting R.C.M. 604(b) motions is actual prejudice. *Cf. Boyce*, 76 M.J. at 248 ("[N]o such showing [, *i.e.*, actual prejudice,] is required for a meritorious claim of an appearance of [UI]." (footnote omitted)) *with Underwood*, 50 M.J. at 276 (holding that the appellant did not suffer prejudice because he did not lose the benefit of a favorable trial ruling because the "speculative possibility of such an occurrence [cannot] in any sense be considered substantial" (citations omitted)). As explained in *Underwood*, that prejudice inquiry ascertains what, if any, legally cognizable right was compromised by the action. As such, MJ3 was not at liberty to apply speculation or a "public perception" test to find reversible error in an R.C.M. 604(b) prejudice context.

[17] We recognize that, to an extent, our analysis of the underlying UI case law pertaining to remedies for substantiated accusatory UI involves some degree of extrapolation. However, the substantive difference between our extrapolation and MJ3's speculation is that ours is grounded in a review of consistent case law, whereas MJ3's is not.

### III. CONCLUSION

The appeal of the United States under Article 62, UCMJ, is **GRANTED**. The military judge's ruling dismissing Charges I–IV and their specifications is **VACATED**.

The record is returned to The Judge Advocate General for remand to the Chief Trial Judge, Air Force Trial Judiciary, for action consistent with this opinion.


DOUGLAS, Judge (dissenting):

The trial judge's order before us, dated 30 December 2024, dismissing with prejudice the charges and specifications referred to the general court-martial convened by Special Order A-42, dated 11 August 2023, was not an abuse of discretion. Therefore, I respectfully dissent. Specifically, I disagree with the majority's conclusion that the trial judge's application of the law in this case was clearly unreasonable. The trial judge applied relevant statutory provisions and binding case law reasonably to Appellee's facts.

The majority determines that the trial judge failed to reasonably apply the two-part test from *United States v. Underwood*, 50 M.J. 271 (C.A.A.F. 1999). In my opinion, the majority mistakes the trial judge's ruling before us as a conflation of a ruling on UI with a ruling on legitimate withdrawal and dismissal. However, the trial judge's order before us does not involve whether UI was committed in Appellee's case. The trial judge's order before us narrowly focuses upon whether the withdrawal and dismissal in this case complied within the boundaries of the law.

The trial judge found both parts of the two-part *Underwood* test met. Where the two-part test is met, applying military law, including the written specified consequence of an improper withdrawal and dismissal, the trial judge followed the law when he dismissed the charges with prejudice. First, the trial judge found an improper reason for the withdrawal and dismissal of Appellee's charges. This finding of fact was based upon the evidence before him. Second, the trial judge found Appellee suffered unfair prejudice after the improper withdrawal and dismissal of his charges. The trial judge's finding on the second part of the two-part *Underwood* test is clearly written in his order, "Accordingly, the accused did suffer unfair prejudice as a result of the [general court-martial] convening authority's [(GCMCA's)] decision to re[-]refer charges identical to those withdrawn to a new court-martial." Although the trial judge could have included additional words, such as "when the same convening authority had been under judicial review for unlawful command influence, thereby circumventing Appellee's right to a referral authority who is not disqualified in

violation of Article 1(9), UCMJ,[1] Article 37(a)(3), UCMJ, 10 U.S.C. § 837(a)(3),[2] Rule for Courts-Martial (R.C.M.) 601(c), and R.C.M. 604b," I am not confused.

Article 1(9), UCMJ, defines "accuser":

> The term "accuser" means a person who signs and swears to charges, *any person who directs that charges nominally be signed and sworn to by another*, and any other person who has an interest other than an official interest in the prosecution of the accused.

10 U.S.C. § 801(9) (emphasis added).

Article 37(a)(3), UCMJ, explains:

> *No person subject to this chapter may* attempt to coerce or, by any unauthorized means, *attempt to influence the action of* a court-martial or any other military tribunal or any member thereof, in reaching the finding or sentence in any case, or the action of *any* convening, approving, or *reviewing authority* or preliminary hearing officer *with respect to such acts taken pursuant to this chapter as prescribed by the President*.

10 U.S.C. § 837(a)(3) (emphasis added).

R.C.M. 601(c), *Disqualification*, explains, "An accuser may not refer charges to a general or special court-martial."

R.C.M. 604(b) explains, "Charges that have been withdrawn from a court-martial may be referred to another court-martial unless the withdrawal was for an improper reason."

Applying the standard of review to the order before us, the trial judge's

---

[1] Unless otherwise noted, all other references to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Congress enacted significant amendments to Article 37, UCMJ, in the National Defense Authorization Act for Fiscal Year 2020 (FY20 NDAA) which for the first time established, *inter alia*, a material prejudice standard for granting relief for instances of unlawful "command influence" delineated in the statute. Pub. L. No. 116-92, § 532, 133 Stat. 1198, 1359–61 (20 Dec. 2019). Article 37(c), UCMJ, now provides as follows: "No finding or sentence of a court-martial may be held incorrect on the ground of a violation of this section unless the violation *materially prejudices the substantial rights of the accused*." 10 U.S.C. § 837(c) (emphasis added). The effective date of the statute was 20 December 2019, applying prospectively to all actions and cases occurring on or after that date. FY20 NDAA, Pub. L. No. 116-92, § 532(c), 133 Stat. at 1361. All subsequent references to Article 37, UCMJ, are to the FY20 NDAA.

findings of fact were supported by the record, his conclusions of law were correct, and his application of the law was reasonable. *United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014) ("The abuse of discretion standard calls 'for more than a mere difference of opinion. The challenged action must be arbitrary . . . clearly unreasonable, or clearly erroneous.'" (omission in original) (citation omitted)).

First, the withdrawal was for an improper reason rather than for a legitimate command reason. R.C.M. 604(b); *United States. v. Underwood*, 50 M.J. 271, 276 (C.A.A.F. 1999). The improper reason was interfering with the final ruling of the first trial judge by removing the case from his jurisdiction after the first trial judge determined there was some evidence of UI. The primary evidence of the improper reason is the date of the decision to withdraw and dismiss, in relation to the date of the first trial judge's order to the Government to prove that neither the accuser, nor the referral authority had committed UI. Simply stated, the reason to withdraw and dismiss was to re-prefer anew, through a different accuser, but then re-refer anew, with the same referral authority who may have committed UI according to the first trial judge's preliminary ruling. To be clear, had the decision to withdraw and dismiss been for judicial economy, such as to refer additional charges, or edit the referred charges based upon changes in the evidence, that might have been a legitimate command purpose. However, those facts are not in evidence here.

On 1 June 2023, the first trial judge informed the parties, via an email he titled "Notice of Ruling re UCI (Burden Shift to Govt)," that he found "the Defense [had] met its burden of raising some evidence of both apparent and actual [UI] with regard to both the preferral and referral of the charges in this case." In addition to finding the accuser may have been influenced by the referral authority, the first trial judge explained "this same evidence also raises the issue of whether [the 15th Air Force Commander (15 AF/CC)], the GCMCA in this case, stepped into the role of accuser, thereby disqualifying himself from being eligible to refer the charges in this case in accordance with R.C.M. 601(c)."

Consequently, the trial judge ruled that at the next hearing date, on 12 June 2023, "the burden has shifted to the Government to prove beyond a reasonable doubt" that neither actual nor apparent UI existed in the accusatory phase by either the accuser or the GCMCA. But the remainder of the UI motions hearing did not occur as scheduled. Instead, as found by the trial judge's ruling before us, sometime between 1 June 2023 and 7 June 2023, the GCMCA became aware of this burden-shifting ruling on the Defense's UCI motion through his staff judge advocate.

On 7 June 2023, in writing, the GCMCA directed the withdrawal and dismissal of the previously referred charges against Appellee. His intent, as

determined by the trial judge's ruling before us, was to interfere with the impartiality of the court-martial, which is supported not only by the GCMCA's signed withdrawal and dismissal memorandum, but also by his response to a congressional inquiry, dated 8 September 2023, and by his testimony provided on 22 February 2024.

The withdrawal and dismissal memorandum simply directs the withdrawal and dismissal of Appellee's referred charges, without prejudice, and directs trial counsel to effect the GCMCA's decision on the charge sheet, which was done. The GCMCA's response to a congressional inquiry states, "To address the concern of [UI] and based on the advice of my Staff Judge Advocate, I directed that all charges and specifications against [Appellee] be withdrawn and dismissed, without prejudice, which allowed for the case to be refiled at a future date."

In his testimony, the GCMCA explained his decision to withdraw and dismiss Appellee's referred charges was intended to cure the appearance of any UI the accuser may have had or that could have been perceived. The GCMCA explained his expectation was that the charges would be preferred anew, albeit with a different commander, and then he would refer them anew, which he did.

However, despite his withdrawal, dismissal, and the re-preferral of the same charges, through a "cured" accuser, the GCMCA did not recuse himself from further actions in the case. In the GCMCA's sworn testimony, he explained that "by starting over, we're basically curating [sic] *everything*." (Emphasis added). Yet, under cross-examination, when asked the question, "I'm asking you, General, when you decided to dismiss this case, you actually did understand that the implication was that you, at your level, had potentially—a perception was out there that you had potentially influenced [the first accuser], after the Article 15[, UCMJ, 10 U.S.C. § 815]," the GCMCA admitted he had understood: "There was a perception. There could be a perception. Not necessarily that there even was, but there could be."

The record does not include evidence explaining why the GCMCA did not want to wait for a final ruling from the first trial judge on the Defense's UI motion. Nor does the record explain why the GCMCA would not also attempt to cure any potential allegation of UI upon himself by recusing himself. However, the GCMCA did explain that he did not want to send the case to his superior GCMCA. And when asked why he would not use the GCMCA of the Air Force installation where Appellee was assigned, he admitted, "Yes, that would have been an option. We didn't really consider that option then, but yes, that would have been an option, probably a good one."

Assuming the GCMCA cured any actual or perceived UI in the original preferral of charges by Col KC, the original accuser, he failed to cure those portions

of the first trial judge's preliminary ruling that he himself may have caused actual or apparent UI upon Col KC, or that he had stepped into the role as accuser, thereby disqualifying himself from further action on these charges. The improper reason, as correctly determined by the trial judge's ruling before us, was to interfere with the potential final ruling of the first trial judge, by withdrawing and dismissing the charges, thereby removing jurisdiction from the first trial judge, who may have found this GCMCA disqualified.

Second, the improper reason substantially prejudiced Appellee's ability to benefit from the first trial judge's final ruling on the Defense's motion for unlawful influence. *Underwood*, 50 M.J. at 276. Whether this GCMCA was disqualified from further action on these charges was a judicial determination this GCMCA foreclosed when he withdrew and dismissed the referred charges on 7 June 2023, and then re-referred them anew on 11 August 2023. Rather than remedy a final ruling from the first trial judge on accusatory UI, if even necessary, this GCMCA maneuvered to retain referral authority over Appellee's charges instead of ensuring Appellee's charges proceeded to trial free from a disqualified convening authority.

As the first trial judge expressed in his preliminary ruling, this GCMCA may have *attempted to influence the action* of Col KC when Col KC discussed with this GCMCA whether to prefer the charges Appellee faced originally. Article 37(a)(3), UCMJ.

Or, as the first trial judge expressed in his preliminary ruling, this GCMCA may have stepped into the role of accuser if he *directed* that the charges be preferred by the first accuser, Col KC. Article 1(9), UCMJ. If this GCMCA did step into the role of accuser, he might have been disqualified as a referral authority in this case. R.C.M. 601(c).

Here, the trial judge applied the correct law discussed above, including the correct case law. He applied the circumstances from *Underwood* and determined the evidence was in Appellee's favor. This was not an erroneous application of the law. He compared the current facts to those in *Vanover v. Clark*, 27 M.J. 345 (C.M.A. 1988), a case involving convening authority judicial interference as a result of an evidentiary hearing. The comparison is reasonable. Although I agree with Appellee's appellate defense counsel, who explained in our oral argument that *Vanover* is dissimilar factually in that Vanover's case involved a final ruling vice a preliminary ruling, I find that feature to be not particularly relevant to our analysis here. Of greater weight to me, the facts in *Vanover* are distinguished from those here in that the facts here do not involve the admissibility of particular evidence. The facts here are more egregious in that Appellee's case involves interference with a judicial ruling on whether the referral authority would be disqualified.

After reviewing the evidence in the light most favorable to the party which prevailed at trial, and considering the abuse of discretion standard of review, the trial judge's ruling and order before us did not include clearly erroneous facts, incorrect conclusions of law, or an unreasonable application of the law. *Wicks*, 73 M.J. at 98. However, I do believe the majority opinion does abuse their discretion, which is why I dissent.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court